FILED
2021 Aug-31  AM 11:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| TIMOTHY W. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 4:20-CV-000346-LSC |
| ) | |
| Social Security Administration, ) | |
| Commissioner, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.     Introduction**

The plaintiff, Timothy W. Davis ("Davis"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Davis timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Davis was fifty-one years old at the time of his disability onset and fifty-three years old at the time of the unfavorable decision issued by the Administrative Law Judge ("ALJ"). (Tr. at 22, 149.) Davis speaks English, has a high school education,

and completed three years of college. (Tr. at 172-73.) Davis has no past relevant work. (Tr. at 22.) Davis filed the instant application on March 30, 2017, alleging a disability onset date of March 3, 2017, claiming disability due to heart problems, diabetes, high blood pressure, ulcers, and problems with vision. (Tr. at 15, 149, 172.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the plaintiff is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the plaintiff is engaged in SGA, he or she is not disabled, and the evaluation stops. *Id.* If the plaintiff is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the plaintiff's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a plaintiff will be found disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the plaintiff's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the plaintiff's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the plaintiff will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the plaintiff from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff is capable of performing past relevant work, he or she is not disabled, and the evaluation stops. *Id.* If the plaintiff cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the plaintiff's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ determined that Davis has not engaged in SGA since March 30, 2017, the alleged onset date of his disability. (Tr. at 17.) The ALJ determined Davis has the following severe impairments: valvular heart disease, chronic kidney disease, and diabetes mellitus based on the requirements set forth in the regulations. (*Id.*) (20 CFR § 416.920(c)). However,

the ALJ found Davis does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, 416.926). The ALJ determined Davis has the following RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) except occasionally climbing ramps or stairs; never climbing ladders, ropes or scaffolds; occasionally balancing, stooping, kneeling, crouching or crawling; must avoid concentrated exposure to extreme cold and extreme heat, dust, odors, fumes and pulmonary irritants; time off task can be accommodated by normal work breaks.

(Tr. at 18.)

According to the ALJ, Davis has "no past relevant work (20 CFR 416.965)" and is an "individual closely approaching advanced age." (Tr. at 22.) The ALJ determined the "[t]ransferability of job skills [was] not an issue because the claimant does not have past relevant work." (*Id.*) At the hearing, a Vocational Expert ("VE") testified that considering Davis's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR 416.969, 416.969(a)). (*Id.*) The ALJ concluded his findings by stating that Davis has not been under a disability, as defined in the Social Security Act, from March 30, 2017, the date the application was filed, through the date of his decision, March 13, 2019. (Tr. at 23.) The Appeals Council denied Davis's request for review, and he timely filed this appeal. (Tr. at 1-6; Doc. 8.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates

against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III.  Discussion

On appeal, Davis contends the ALJ's decision should be reversed and remanded for reasons that fall into three categories: (1) the ALJ failed to properly evaluate the opinion of treating physician, Dr. Keneshia Kirksey; (2) the ALJ failed to recontact the treating physician or order a consultative examination; and (3) the ALJ's RFC finding is conclusory and violates Social Security Ruling ("SSR") 96-8p.

**A. Weight to Medical Opinion**

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined

you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis*, 125 F.3d at 1440) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Further, opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). *See also Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (recognizing that although a claimant's physician may state his is "disabled" or "unable to work," "the agency will nevertheless determine disability based upon the medical findings and other evidence."). Statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Davis contends the ALJ failed to afford proper weight to the opinion of Dr. Kirksey regarding his inability to work for over a year due to his endocarditis. He argues the ALJ erroneously afforded partial weight to Dr. Kirksey's opinion. However, the ALJ explained he found Dr. Kirksey's opinion to be partially persuasive because whether Davis is unable to work is an opinion reserved for the Commissioner (20 CFR § 404.1527(c)) and her opinion was given before Davis's surgery in August 2017. (Tr. at 21.) *See also Bell*, 796 F.2d at 1353-54 as discussed *supra*.

Dr. Kirksey completed a letter signed on March 29, 2017, in which she opined Davis would "not be able to work for greater than one year" due to infective endocarditis requiring close cardiac follow up and possibly extensive surgery to repair his heart. (Tr. at 228.) Davis first reported to UAB Hospital on March 3, 2017. (Tr. at 232). At the time, he was without routine medical care and had not seen a doctor in the past twenty years. (*Id.*) He complained of abdominal pain, diffused weakness, and pain in the setting of severe hyperglycemia. (*Id.*) Davis was admitted to the hospital, and labs were notable for glucose 713. (*Id.*) Davis was treated for hyperosmolar hyperglycemic syndrome ("HHS"), which is a serious complication of diabetes mellitus, by being given an 8.5 liter IV, which subsequently resolved his HHS. (Tr at 235.) While in the hospital, Davis had several procedures: thoracentesis[1] (March 10, 2017); a transurethral resection of the prostate ("TURP")[2] (March 15, 2017); and unroofing of prostatic abscess (March 17, 2017). (Tr. at 270.) On March 19, 2017, a chest x-ray showed Davis had considerable worsening of the extensive bilateral airspace lung opacities and a markedly enlarged prostate gland. (Tr. at 261.) On March 23, 2017, Dr. Kirksey noted that Davis's

---

[1] Thoracentesis is a procedure to remove fluid or air from around the lungs. The Johns Hopkins University, *Thoracentesis*, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/thoracentesis#:~:text=Thoracentesis%20is%20a%20procedure%20to,membranes%20that%20surrounds%20the%20lungs (last visited August 17, 2021).

[2] TURP is a surgical procedure that involves cutting away a section of the prostate. The John Hopkins University, *Transurethral Resection of the Prostate (TURP)*, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/transurethral-resection-of-the-prostate-turp (last visited August 17, 2021).

functional level was expected to improve with therapy and medical supervision. (Tr. at 321.) She also noted that his expected length of stay while he completed rehabilitation and therapy would only be fourteen days. (Tr. at 323.) Even though her notes from March 23, 2017, indicated that Davis's condition would improve, her letter written six days later stated that he would not be able to work for greater than one year. (Tr. at 228.)

Davis was re-admitted to UAB Hospital on April 16, 2017, with a diagnosis of mitral valve endocarditis and methicillin-susceptible staphylococcus aureus (MSSA) enterococcus bacteremia on home antibiotics. (Tr. at 334.) He reported to the hospital because he had progressively worsening shortness of breath and edema. (*Id*.) He was volume overloaded, hypertensive, and in respiratory distress. (*Id*.) Surgery was consulted for his mitral valve endocarditis; however, any intervention was deferred until he could complete six weeks of IV antibiotics. (Tr. at 334, 391.) Davis's symptoms improved with diuresis and blood pressure control. (Tr. at 340.) When Davis reported to UAB Hospital on May 23, 2017, for a follow up visit, he reported that he had "been doing well, trying to walk about ½ mile a few times a week..." (Tr. at 410.) Although Dr. Kirksey was not the primary physician that attended to Davis during his stay at UAB Hospital in April, nor for his follow up visit

in May, she opined in a letter written on June 29, 2017, that he would be unable to work for greater than one year. (Tr. at 722.)

On August 31, 2017, Davis underwent mitral valve replacement ("MVR"). (Tr. at 993.) At his follow up appointment on September 20, 2017, he reported that he was feeling better, walking every day, and staying active. (Tr. at 998.) Dr. Sara Pereira noted that previously Davis required a wheelchair when he came into the clinic, but after his MVR he was ambulating without assistance. (*Id.*) The diagnostic exam completed that day showed there had been no acute abnormalities since September 3, 2017, following Davis's MVR.

Substantial evidence supports the ALJ's finding that Dr. Kirksey's opinion was only partially persuasive. Dr. Kirksey's two opinions that Davis would be unable to work for greater than a year were written in March 2017 and June 2017, well before his MVR on August 31. Dr. Kirksey's opinion is not consistent with the medical record of evidence. At numerous visits to UAB, Davis reported improved symptoms. The ALJ specifically points out the report at Davis's follow up appointment on September 20, 2017, where the medical evidence indicated improvement ambulating without assistance and performing activities of daily living. (Tr. at 998.)

As shown above, the ALJ articulated reasons for finding Dr. Kirksey's opinion partially persuasive, and substantial evidence supports those reasons.

### B. Development of the Record

Davis argues that the ALJ should have sought additional medical records from his treating physician or should have ordered a consultative examination to determine whether he remained disabled after his last treatment at UAB.

The ALJ "has a basic obligation to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). "However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* (quotation marks omitted). The ALJ "may" recontact a claimant's treating physician if the ALJ decides that the evidence is insufficient to determine whether the claimant is disabled. *See* 20 CFR § 416.920b(c)(1), (c)(3). The regulations do not mandate recontacting a treating physician unless the ALJ deems it necessary. An ALJ is not required to order a consultative examination when the record contains sufficient evidence for the ALJ to make an informed decision. *See Doughty*, 245 F.3d at 1281. A consultative

examination need not be obtained to establish certainty regarding a claimant's condition, as the Social Security Act requires only substantial evidence to support the ALJ's finding. *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).

Moreover, "the claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence to support his claim." *Ellison*, 355 F.3d at 1276. Thus, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). "[The] ALJ should re-contact a claimant's treating physician if the evidence in the record is otherwise inadequate to determine whether the claimant is disabled." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010); 20 C.F.R §§ 404.1512(e), 416.912(e).

Davis failed to establish that any additional records from his treating physician even exist and what they would say in support of his disability claim. Davis also failed to show that ordering a consultative examination was necessary for the ALJ to make an informed decision. *See Graham*, 129 F.3d at 1423. Additionally, Davis can only hope that a consultative examination might produce evidence to support his claim. Hope or speculation is not a basis for ordering a consultative examination. *See McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016) (stating "[a] claimant cannot show prejudice by speculating that [h]e would have benefitted from

a more comprehensive hearing"). Davis thus makes no "clear showing of prejudice" as is required when arguing that the record was inadequately developed. *See Graham*, 128 F.3d at 1422. Accordingly, the Court will not remand this action for further development of the record.

### C. RFC Finding and SSR 96-8p

A claimant bears the burden of proving he was disabled within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(a), (c); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ considered Davis's disability claim using the five-step sequential evaluation process as discussed *supra*. To determine if he could perform his past relevant work at step four or other work at step five, the ALJ assessed Davis's RFC. An individual's RFC represents the most he can still do, despite his limitations, in a work setting. 20 C.F.R. § 404.1545(a)(1). In order to determine an individual's RFC, the ALJ assesses all of the relevant evidence in the record, including medical reports prepared by a physician or other healthcare provider, as well as more subjective descriptions and observations of an individual's limitations. *Id.* § 404.1545(a)(3). Moreover, the evaluator considers not only the impairments classified as "severe" but the "limiting effects" of all conditions when making a judgment about an individual's RFC. *Id.* § 404.1545(e). A reviewing court will affirm the ALJ's RFC assessment if

it is supported by the objective medical evidence. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Davis argues the ALJ's RFC assessment is conclusory, violates Social Security Ruling ("SSR") 96-8p, and is not supported by substantial evidence. Davis's brief presents a cursory argument regarding the ALJ's RFC analysis. It primarily quotes Social Security Ruling ("SSR") 96-8p, and snippets of case law but fails to cite any evidence or make a specific argument. (Doc. 8 at 30-33.) Davis's brief states, "While the ALJ summarized the medical evidence, the RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p. The ALJ omitted any limitations caused by pain, severe diabetes, absences caused by complications, heart conditions, and chronic kidney conditions." (*Id*. at 31.) SSR 96-8p states the Commissioner's policies regarding the assessment of a claimant's RFC and calls for the ALJ to provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 (July 12, 1996). Additionally, the ruling calls for the ALJ to describe how the evidence supports his conclusion and why "reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical

it is supported by the objective medical evidence. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Davis argues the ALJ's RFC assessment is conclusory, violates Social Security Ruling ("SSR") 96-8p, and is not supported by substantial evidence. Davis's brief presents a cursory argument regarding the ALJ's RFC analysis. It primarily quotes Social Security Ruling ("SSR") 96-8p, and snippets of case law but fails to cite any evidence or make a specific argument. (Doc. 8 at 30-33.) Davis's brief states, "While the ALJ summarized the medical evidence, the RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p. The ALJ omitted any limitations caused by pain, severe diabetes, absences caused by complications, heart conditions, and chronic kidney conditions." (*Id*. at 31.) SSR 96-8p states the Commissioner's policies regarding the assessment of a claimant's RFC and calls for the ALJ to provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 (July 12, 1996). Additionally, the ruling calls for the ALJ to describe how the evidence supports his conclusion and why "reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical

and other evidence." *Id.* Davis does not present any arguments as to why the ALJ's RFC assessment is conclusory. As such, he has waived that argument. *See e.g. Outlaw v. Barnhard*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding claimant waived issue because he did not elaborate on claim or provide citation to authority regarding claim).

Nonetheless, substantial evidence supports the ALJ's RFC analysis. The ALJ found the record evidence as a whole supported an RFC to perform light work with additional limitations including occasionally climbing ramps or stairs; never climbing ropes, ladders, or scaffolds; occasionally balancing, stooping, kneeling, crouching, or crawling; avoiding concentrated exposure to extreme cold and extreme heat, dust, odors, fumes, and pulmonary irritants. (Tr. at 18.)

The ALJ noted that although Davis alleged disabling functional limitations arising from his impairments, the objective medical evidence and evidence of his daily activities established he has a greater sustained capacity than he alleged. (Tr. at 22.) Davis specifically argues that the ALJ failed to consider any limitations caused by his severe diabetes. However, the ALJ discussed that diabetes mellitus is not a listed impairment for adults. (Tr. at 18.) The ALJ considered the effects of diabetes mellitus on other body systems, either alone or in combination with other impairments, and whether that would meet or medically equal the criteria of a listing

in an effected body system, SSR 14-2p and listing 9.00(B)(5). (*Id.*) The medical evidence of record indicated no diabetic complications, including but not limited to amputations (1.05); diabetic retinopathy (2.02); coronary artery disease (4.04); peripheral vascular disease (4.12); diabetic gastroparesis (5.00); diabetic neuropathy (6.06); poorly healing bacterial or fungal infections (8.00); or diabetic peripheral neuropathy (11.14), which would meet or equal the severity of any listed impairment. (*Id.*)

Additionally, contrary to Davis's claim that the ALJ did not consider his heart or pulmonary conditions when rendering his RFC assessment, the ALJ included a limitation to avoid concentrated exposure and pulmonary irritants. (Tr. at 22.) Furthermore, the medical evidence showed that after Davis's MVR on August 31, 2017, he stated that he was feeling better, that he restarted Lyrica at an increased dosage which helped tremendously with his leg pain, and that he was walking every day and staying active. (Tr. at 998.)

The ALJ complied with SSR 96-8p by providing a narrative discussion that cited specific evidence and described how the evidence supported his conclusion. *See Castel v. Astrue*, 355 F. App'x 260, 263 (11th Cir. 2009) (holding the ALJ complied with SSR 96-8p by discussing the relevant evidence and making a finding of the plaintiff's exertional limitations).

## IV. Conclusion

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on August 31, 2021.

_____
L. Scott Coogler
United States District Judge

160704